UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:22-cv-23046-JEM/Becerra

SYNOVUS BANK d/b/a FLORIDA
COMMUNITY BANK, N.A.,

      Plaintiff,

v.

FC GLOBAL TRADING, INC.,
DIAJEN ENTERPRISES, INC., and
ALL AMERICAN PARTS CORP.,

      Defendants.
_____/

# REPORT AND RECOMMENDATION[1]

**THIS CAUSE** came before the Court on Plaintiff Synovus Bank d/b/a Florida Community Bank, N.A.'s ("Plaintiff" or "Synovus") Motion for Entry of Default Final Judgment and for an Award of Damages Against Defendants FC Global Trading, Inc. ("FC Global"), Diajen Enterprises, Inc. ("Diajen"), and All American Parts Corp. ("All American Parts") (collectively, "Defendants") (the "Motion"), ECF No. [11]. Defendants did not file a response to the Motion, and the time to do so has passed. Counsel for Plaintiff appeared before the undersigned for oral argument on the Motion on June 9, 2023 (the "Hearing"). *See* ECF No. [26]. Subsequently, with leave of Court, Plaintiff submitted a Supplement to Motion for Entry of Default Final Judgment, ECF No. [27], and an Amended Supplement to Motion for Entry of Default Final Judgment, including exhibits ("Plaintiff's Supplement"), ECF No. [29]. Upon due consideration of Plaintiff's Motion, the argument of Plaintiff, the pertinent portions of the record, and being otherwise fully

---

[1] This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge. ECF No. [14].

1

advised in the premises, it is hereby **RECOMMENDED** that the Motion be **GRANTED IN PART AND DENIED IN PART**, as follows.

## I.     BACKGROUND

This action arises out of a series of loans issued by Plaintiff to non-parties LCH Trading, Inc. ("LCH Trading") and LCH Engine Repair, Inc. ("LCH Engine") (collectively, the "LCH Entities"). ECF No. [1] ¶¶ 12–27. In or around March 2019, Plaintiff issued four loans to the LCH Entities, totaling approximately $12,000,000.00 (the "Loans"). *Id.* At the time the Loans were issued, Francisco M. Chirino ("Chirino"), the owner of the LCH Entities, executed personal guaranties for each of the loans. *Id.* ¶¶ 22, 26. Approximately two years later, the LCH Entities ceased payments on the Loans, which constituted a monetary default under the terms of the Loans. *Id.* ¶¶ 28–29.

On August 21, 2021, Plaintiff filed an action in this District against the LCH Entities and Chirino, individually (the "Loan Action"). *Id.* ¶ 30. The Loan Action asserted four claims against the LCH Entities and Chirino, for replevin, breach of contract under the Loan documents, breach of guaranty, and breach of contract under a forbearance agreement. *Id.* ¶ 31. On October 19, 2021, the Court entered a final default judgment against the LCH Entities only. *Id.* ¶ 32. The final default judgment entitled Plaintiff to recover $5,044,894.44 plus interest from the LCH Entities (the "LCH Default Judgment"). *Id.* ¶ 33.

Plaintiff chose not to seek default judgment against Chirino, individually, because in September 2021, Chirino filed a voluntary petition for relief under Chapter 7 of 11 U.S.C. § 101 *et seq.* in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Action"). *Id.* ¶ 34. In the course of the Bankruptcy Action, Plaintiff has taken three depositions of Chirino regarding his financial affairs (the "Chirino Depositions"). *Id.* ¶ 35. Through the

Chirino Depositions, Plaintiff learned about other entities owned and operated by Chirino, each of which did business with and/or received transfers from the LCH Entities. *Id.* ¶ 36. Those three entities—FC Global, Diajen, and All American Parts—are the Defendants herein. *Id.*

Plaintiff filed the Complaint in the instant action on September 22, 2022. ECF No. [1]. Plaintiff asserts seven claims against Defendants for: a declaratory judgment establishing that Defendants are the alter egos of Chirino and the LCH Entities (Count I); fraudulent transfers (Counts II–IV); and unjust enrichment (Counts V–VII). *Id.* In addition to a declaratory judgment, Plaintiff seeks damages totaling $955,974.45 from FC Global, $925,534.00 from Diajen, and $128,378.10 from All American Parts. *Id.* at 25–27.

As to Count I, Plaintiff seeks a declaratory judgment that Defendants are the alter egos of Chirino and the LCH Entities. *Id.* ¶¶ 90–102. On this count, Plaintiff alleges that "Chirino (i) exclusively owned and operated each of the LCH Entities and the [Defendants]; (ii) failed to maintain the corporate formalities and the corporate existence among his entities; (iii) transferred funds from the LCH Entities to the [Defendants] at his discretion; (iv) used funds of the corporations for personal, rather than corporate, purposes; (v) operated all entities out of the LCH Business Premises or the Chirino Homestead; and (vi) did not conduct business amongst his entities at arm's length." *Id.* ¶ 93.

As support for Count I, Plaintiff relies upon Chirino's testimony from the Chirino Depositions in the Bankruptcy Action. *Id.* ¶¶ 50, 51, 63, 64, 68, 70. For instance, Chirino testified that he would "move things around" between Defendants and LCH Trading:

> Q. What business did Diajen do?
>
> A. It all has to do with aviation. The same thing with FC Global. Same thing as All American. Smaller companies that I had. And if I could make a deal, or usually a smaller deal, usually, in comparison to LCH Trading – and LCH Trading was always doing great. This is a company that was always very profitable. It was

3

> doing good. So if I could do something just to keep some money to pay customers sometimes when I had to pay, or to pay my bills, my cars, and stuff like that, and to use credit cards from my debit card when I was traveling – again, what happened is I never thought I was going to be in a position like this today. And all these companies are mine. So I could move things around as long as it was legal for the government. And that's what you are seeing.

*Id.* ¶ 63 (citing [1-11] at 55:2–55:18). Similarly, Chirino testified that he would use Defendants for specific transactions "for liability purposes":

> Q. Okay. In January of 2020 there's a wire from LCH Trading to Diajen Enterprises in the amount of 107,250, and the memo says funds collected on Diajen's behalf. Why would LCH Trading be collecting funds from Diajen?
>
> A. I'd have to look at that. It was probably something that – for liability purposes I may have did but I'd have to look it up. I don't know. Right now I just can't recall that. But, like I said, it might have been for liability purposes.
>
> Q. What do you mean for liability purposes?
>
> A. If I was dealing with someone that didn't want my company to deal with straight from LCH Trading, then I would do it through one of my other companies. In this case, that's the only thing I can think of . . .

*Id.* (citing [1-9] at 135:20–136:8). Chirino further testified, referring to Defendants and the LCH Entities, that "[a]t the end of the day all those companies were mine." *Id.* ¶ 50 (citing ECF No. [1-11] at 14:19–14:20). Plaintiff alleges that these, and other, statements provide support for the proposition that Defendants are simply alter egos of Chirino and the LCH Entities, such that Plaintiff's final judgment in the Loan Action should be collectable from Defendants. *Id.* ¶ 101.

As to Counts II–IV, Plaintiff seeks damages from each Defendant for fraudulent transfers. *Id.* ¶¶ 103–126. At issue are multiple transfers from LCH Trading to each Defendant, totaling $955,974.45 to FC Global, $925,534.00 to Diajen, and $128,378.10 to All American Parts. *Id.* ¶¶ 104, 112, 120. Plaintiff alleges that these transfers were fraudulent, as they were comprised of proceeds from the Loans, and were made when LCH Trading was insolvent. *Id.* ¶¶ 103–126.

As to Counts V–VII, Plaintiff seeks damages from each Defendant under a theory of unjust enrichment. *Id.* ¶¶ 127–150. Plaintiff alleges that Defendants have been unjustly enriched by the allegedly fraudulent transfers of Loan proceeds from LCH Trading to each Defendant. *Id.* Plaintiff alleges that it was damaged by these transfers because, "[a]t least in some part, due to the [transfers], the [LCH Entities] failed to repay the Consolidation Loan to [Plaintiff], which loan is due and owing and has not been forgiven." *Id.* ¶¶ 130, 138, 146.

Defendants were served with the Complaint on September 30, 2022. *See* ECF Nos. [4] (return of service on FC Global); [5] (return of service on Diajen); [6] (return of service on All American Parts). When Defendants failed to respond to the Complaint, Plaintiff filed a Motion for Entry of Clerk's Default, ECF No. [7], and a Clerk's Default was entered. ECF No. [8]. The District Court then entered an Order on Default Final Judgment, ECF No. [9], which was served on Defendants on October 26, 2022. ECF No. [10] (certificate of service).

Thereafter, Plaintiff filed the instant Motion, requesting the entry of default judgment against Defendants. ECF No. [11]. Plaintiff requests "that this Court enter a Default Final Judgment as to Counts I–VII of the Complaint against Defendants, along with an award of Plaintiff's respective damages," and states that "[t]he resulting damages to Plaintiff have amounted to $2,009,886.55." *Id.* ¶ 67. In support of its Motion, Plaintiff filed the following: (1) the Order of Final Default Judgment against the LCH Entities in the Loan Action, ECF No. [11-1]; (2) a "Schedule of Net Payments to/from" each Defendant "During the Period January 1, 2017 through November 30, 2021," ECF Nos. [11-2], [11-4], [11-6]; and (3) demand letters from Plaintiff to each Defendant, ECF Nos. [11-3], [11-5], [11-7]. Plaintiff subsequently filed, with leave of Court, a Supplement to Motion for Entry of Default Final Judgment, ECF No. [27], and an Amended

5

Supplement to Motion for Entry of Default Final Judgment, including exhibits ("Plaintiff's Supplement"), ECF No. [29].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth the procedure for obtaining a default judgment. Subsection (a) provides that the Clerk of Court must enter default when the defendant fails "to plead or otherwise defend." FED. R. CIV. P. 55(a). Upon the entry of a clerk's default, the Court must enter a judgment "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, . . . on the plaintiff's request, with an affidavit showing the amount due . . . ." *Id.* at 55(b)(1). While "[a]ll well-pleaded allegations of fact in the complaint are deemed admitted upon entry of default, [] before entering a default judgment the Court must ensure . . . that the complaint adequately states a claim for which relief may be granted." *United State v. Eye*, No. 10-cv-60739, 2010 WL 11610271, at *2 (S.D. Fla. Aug. 31, 2010) (citing *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009)). That is, in determining whether default judgment may be entered, courts must review the allegations in the complaint to determine whether there is a "sufficient basis in the pleadings for the particular relief sought." *United States v. Genesis II Church of Health & Healing*, 476 F. Supp. 3d 1283, 1289 (S.D. Fla. 2020) (citing *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007)); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (noting that the "sufficient basis" standard is akin to the motion to dismiss standard). Once liability has been established, "[d]amages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (quotations omitted). Rule 55 does not require an evidentiary hearing on damages where the

amount claimed is either liquidated or capable of arithmetic calculation. *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 746–47 (11th Cir. 2017) ("[E]videntiary hearings are required in all but limited circumstances, such as when hearing any additional evidence would be truly unnecessary to a fully informed determination of damages") (quotations omitted); *Tara Productions, Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011) (noting that under Rule 55, district courts are not required to conduct evidentiary hearings).

### III. ANALYSIS

Plaintiff seeks default judgment as to all counts of its Complaint. Specifically, Plaintiff asserts one count for a declaratory judgment as to all Defendants (Count I); three counts for fraudulent transfers in violation of Section 726.106 of the Florida Statutes against Defendants (Counts II–IV); and three counts for unjust enrichment against Defendants (Counts V–VII). For the reasons outlined below, the undersigned finds that the Motion should be granted as to Counts I, V, VI and VII, and denied as to Counts II–IV.

#### A. Count I: Declaratory Judgment

In Count I, Plaintiff seeks a declaratory judgment that Defendants are alter egos or mere instrumentalities of both Chirino and the LCH Entities. ECF No. [1] ¶ 96. Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the Court may "'declare the rights and other legal relations of any interested party' in a 'case of actual controversy within its jurisdiction.'" *Spliethoff Bevrachtingskantoor B.V. v. United Yacht Transport LLC*, No. 21-cv-61422, 2022 WL 17070554, at *9 (S.D. Fla. Nov. 17, 2022) (citing 28 U.S.C. § 2201). "Courts possess 'unique and substantial discretion' under the [Declaratory Judgment] Act." *James River Ins. Co. v. Rich Bon Corp.*, 34 F.4th 1054, 1060 (11th Cir. 2022) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). In Florida, "[p]iercing the corporate veil is proper where the corporation 'is a mere device or sham to

7

accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose.'" *Eckhardt v. United States*, 463 F. App'x 852, 855 (11th Cir. 2012) (quoting *Aztec Motel, Inc. v. Faircloth*, 251 So. 2d 849, 852 (Fla. 1971)). To pierce the corporate veil, a plaintiff must show: "(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant." *Id.* at 855–56 (citing *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008)).

First, as to the declaratory judgment standard, Plaintiff alleges that there is a "*bona fide*, actual, present, and practical need for a declaratory judgment," and that "an actual controversy exists as to the true nature and existence of the [Defendants] and whether the assets of this entity [sic.] should be subject to execution with respect to the Final Judgment [in the Loan Action], rendering the Bank unsure of its rights related thereto." *Id.* ¶¶ 92, 99. Plaintiff further alleges that a declaratory judgment is required because its "ability to enforce the Final Judgment [from the Loan Action] is depending upon a determination of the ownership of [Defendants] under Florida law." *Id.* ¶ 98. The Court finds that Plaintiff has made an adequate showing of need for a declaratory judgment herein.

The alter ego/mere instrumentality determination is an individualized inquiry as to each Defendant. As to Defendant FC Global, Plaintiff alleges that Chirino exclusively owns and controls both FC Global and the LCH Entities, operates the companies from the same business location, and uses the companies for the same business purpose—namely, "flipping engines." ECF

No. [1] ¶¶ 12, 14, 15, 16, 43, 44, 46. Plaintiff alleges that Chirino "would utilize FC Global to divert funds or transactions that could or should have been undertaken by LCH Trading, but were typically smaller in size or riskier in nature." *Id.* ¶ 47 (citing ECF No. [1-11] at 12:6-13). Plaintiff alleges that the LCH Entities transferred money freely to FC Global on multiple occasions without receiving any goods or services in exchange, and without any indication that the transfers were loans to be repaid. *Id.* ¶¶ 48, 49, 52, 53. Further, Plaintiff alleges that Chirino used money from FC Global to pay "significant personal expenditures on his behalf and for the benefit of his family members," including the purchase of "two Chevrolet Blazers owned by FC Global [which] are the vehicles personally driven by his wife and oldest daughter." *Id.* ¶ 54. As such, Plaintiff properly alleges that Chirino and the LCH Entities (through Chirino) "dominated and controlled [FC Global] to such an extent that the corporation's independent existence was in fact non-existent"; used FC Global for the improper purpose of diverting funds or transactions that could or should have been undertaken by LCH Trading, but were typically smaller in size or riskier in nature, as well as for the personal benefit of Chirino and his family; and that the "fraudulent or improper use of the corporate form" of FC Global "caused injury to" Plaintiff, as Plaintiff can no longer access its funds that were freely transferred between FC Global and the LCH Entities, as its final judgment lies only against the LCH Entities. Accordingly, the Court finds that default judgment should be entered on Count I as to FC Global.

      As to Defendant Diajen, Plaintiff alleges that Chirino exclusively owns and controls both Diajen and the LCH Entities, operates Diajen from his homestead as opposed to a separate business premises, and operates the companies for the same business purpose—namely, "brokering sales of parts" for airlines. ECF No. [1] ¶¶ 12, 14, 15, 61, 63. Plaintiff alleges that Chirino "would utilize Diajen to divert funds or transactions that could or should have been undertaken by LCH Trading,

9

but were typically smaller in size or riskier in nature." *Id.* ¶ 64 (citing ECF No. [1-11] at 55:19-56:3). Plaintiff alleges that the LCH Entities transferred money freely to Diajen on multiple occasions without receiving any goods or services in exchange, and without any indication that the transfers were loans to be repaid. *Id.* ¶¶ 65, 67, 68. Further, Plaintiff alleges that Chirino used money from FC Global to pay "significant personal expenditures on his behalf and for the benefit of his family members," including "[h]elping his daughter," making car payments, and making mortgage payments on a home. *Id.* ¶ 70 (citing ECF No. [1-11] at 97:18-21, 100:11-101:8). As such, Plaintiff properly alleges that Chirino and the LCH Entities (through Chirino) "dominated and controlled [Diajen] to such an extent that the corporation's independent existence was in fact non-existent"; used Diajen for the improper purpose of diverting funds or transactions that could or should have been undertaken by LCH Trading, but were typically smaller in size or riskier in nature, as well as for the personal benefit of Chirino and his family; and the "fraudulent or improper use of the corporate form" of Diajen "caused injury to" Plaintiff, as Plaintiff can no longer access its funds that were freely transferred between Diajen and the LCH Entities, as its final judgment lies only against the LCH Entities. Accordingly, the Court finds that default judgment should be entered on Count I as to Diajen.

Finally, as to Defendant All American Parts, Plaintiff alleges that Chirino exclusively owns and controls both All American Parts and the LCH Entities, operates All American Parts from his homestead as opposed to a separate business premises, and operates the companies for the same business purpose—namely, "brokering sales of parts" for airlines. ECF No. [1] ¶¶ 12, 14, 15, 76, 78. Plaintiff alleges that Chirino "would utilize All American Parts to divert funds or transactions that could or should have been undertaken by LCH Trading, but were typically smaller in size or riskier in nature." *Id.* ¶ 79 (citing ECF No. [1-11] at 61:4-8). Plaintiff alleges that the LCH Entities

10

transferred money freely to All American Parts on multiple occasions without receiving any goods or services in exchange, and without any indication that the transfers were loans to be repaid. *Id.* ¶¶ 81, 82, 83. Further, Plaintiff alleges that Chirino used money from All American Parts to pay "significant personal expenditures on his behalf and for the benefit of his family members," including for the use of a "Can-Am off-road vehicle" for personal use. *Id.* ¶ 84 (citing ECF No. [1-11] at 64:1-25). As such, Plaintiff properly alleges that Chirino and the LCH Entities (through Chirino) "dominated and controlled [All American Parts] to such an extent that the corporation's independent existence was in fact non-existent"; used All American Parts for the improper purpose of diverting funds or transactions that could or should have been undertaken by LCH Trading, but were typically smaller in size or riskier in nature, as well as for the personal benefit of Chirino and his family; and the "fraudulent or improper use of the corporate form" of All American Parts "caused injury to" Plaintiff, as Plaintiff can no longer access its funds that were freely transferred between All American Parts and the LCH Entities, as its final judgment lies only against the LCH Entities. Accordingly, the Court finds that default judgment should be entered on Count I as to All American Parts.

### B. Counts II, III, and IV: Fraudulent Transfers Pursuant to Fla. Stat. § 726.106

Plaintiff has failed to adequately plead its claims of fraudulent transfers against each Defendant. Plaintiff asserts three counts for fraudulent transfers pursuant to Section 726.106 of the Florida Statutes: Count II (against FC Global), Count III (against Diajen), and Count IV (against All American Parts). *See* ECF No. [1] ¶¶ 103–134.

Section 726.106 is the "constructive fraud provision" of the Florida Uniform Fraudulent Transfer Act ("FUFTA"). *See TTT Foods Holding Company LLC v. Namm*, No. 16-cv-81798, 2017 WL 2901329, at *13 (S.D. Fla. May 19, 2017). Section 726.106 provides:

11

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
>
> (2) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

FLA. STAT. § 726.106. A plaintiff can state a claim for fraudulent transfers under FUFTA by meeting either the requirements outlined in subsection (1) or subsection (2). *See National Maritime Services, Inc. v. Straub*, 776 F.3d 783 (11th Cir. 2015) (applying FLA. STAT. § 726.106(2)); *WDBH-BD Holdings Ltd. v. Varsatel Corp.*, 2022 WL 3701452, at *6–7 (S.D. Fla. June 16, 2022) (applying FLA. STAT. § 726.106(1)). Plaintiff does not specify upon which subsection it relies for these counts, however, given the language used in the Complaint, *i.e.*, "reasonably equivalent," as opposed to "antecedent debt," the Court construes the claim as one arising under subsection (1). ECF No. [1] ¶¶ 105, 107, 113, 115, 121, 124.

To state a claim for fraudulent transfers under Section 726.106(1), a plaintiff must show: (1) a transfer was made by the debtor; (2) after the creditor's claim arose; (3) the debtor made the transfer without receiving a reasonably equivalent value in exchange; and (4) the debtor was insolvent as a result of the transfer. FLA. STAT. § 726.106(1). The language of the statute is singular, *i.e.*, "*a* transfer" and "as a result of *the* transfer," and Courts analyze each transfer individually under the elements of Section 726.106(1). *See In re Toy King Distributors, Inc. v. Liberty Savings Bank, FSB*, 256 B.R. 1 (M.D. Fla. 2000) ("Although the plaintiff has failed to establish that *some of the* transfers are constructively fraudulent under Section 548(a)(1)(B) of the

Bankruptcy Code and Section 726.106, Florida Statutes, the plaintiff did establish that these transfers were actually fraudulent.") (emphasis added).

With respect to the Loans, Plaintiff alleges that LCH Trading is the debtor, Plaintiff is the creditor, and each Defendant is an "affiliate and therefore an 'insider' of the [Plaintiff's] Borrowers, the LCH Entities." ECF No. [1] ¶¶ 17–19, 24, 105, 113, 121. Plaintiff alleges that LCH Trading (*i.e.*, the debtor) made multiple transfers, totaling: $955,974.45 to FC Global, $925,534.00 to Diajen, and $128,378.10 to All American Parts (collectively, the "LCH Transfers"). *Id.* ¶¶ 104, 112, 120. Plaintiff alleges not only that these transfers all occurred after Plaintiff's (*i.e.,* the creditor) claim to the Loan proceeds arose, but also that the LCH Transfers were *comprised of* the Loan Proceeds themselves. *Id.* Plaintiff alleges that LCH Trading "made the [LCH Transfers] without receiving reasonably equivalent value in exchange for same." *Id.* ¶¶ 107, 115, 124. Plaintiff alleges that the LCH Transfers "were concealed while [the LCH Entities] and Mr. Chirino failed to repay or delayed repayment to [Plaintiff]." *Id.* ¶¶ 109, 117, 125. Finally, Plaintiff alleges that "LCH Trading was insolvent or became insolvent as a result of the [LCH Transfers]." *Id.* ¶¶ 106, 115,4, 122.

At the Hearing, the Court addressed the deficiencies in Plaintiff's Motion on Counts II–IV and provided Plaintiff an opportunity to file a supplement to cure any such deficiencies. Specifically, the Court noted that Plaintiff aggregated transfers from LCH Trading to each Defendant, going back as far as 2017, and did not adequately allege *when* LCH Trading was insolvent such that any of the transfers could be considered fraudulent under Section 726.106. Plaintiff's Supplement does not cure the deficiency. Plaintiff's Supplement states that "[u]pon information and belief, payment on the Synovus Loans from the Borrowers was consistently irregular and ceased altogether in early 2021," and that "the LCH Entities were presumptively

13

insolvent because at the time the LCH Entities transferred Plaintiff's loan proceeds to Defendants, the LCH Entities were unable to meet their own financial obligations, as payments to Plaintiffs were irregular and further loans were required from Plaintiff to keep the LCH Entities afloat." ECF No. [27] at 5–6. Again, Plaintiff's argument fails to address the date, if any, upon which LCH Trading became insolvent, such that the subsequent transfers would become fraudulent. Seeing as the transfers at issue begin as early as January 6, 2017, and Plaintiff summarily states that payments were "consistently irregular" yet did not cease until 2021, Plaintiff's allegations are insufficient to cure the deficiency. *See id.* As such, the Court finds that Plaintiff's Motion should be **DENIED** as to Counts II–IV.

### C. Counts V, VI, and VII: Unjust Enrichment

Plaintiff has adequately pled its claims of unjust enrichment against each Defendant. Plaintiff asserts three counts for unjust enrichment pursuant to Florida law: Count V (against FC Global), Count VI (against Diajen), and Count VII (against All American Parts). *See* ECF No. [1] ¶¶ 127–150. To state a claim for unjust enrichment under Florida law, a plaintiff must show: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1101 (11th Cir. 2021) (citing *Virgilio v. Ryland Grp., Inc.,* 680 F.3d 1329, 1337 (11th Cir. 2012)); *see also Sallah v. Flansburg*, No. 16-cv-80032, 2016 WL 11811349, at *4 (S.D. Fla. Dec. 14, 2016) (granting motion for default judgment as to unjust enrichment). Additionally, "to prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit to the defendant." *Marrache*, 17 F.4th at 1101 (citing *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017)).

At the first element, Plaintiff relies on a theory of alter ego to allege that it conferred a direct benefit on Defendants. ECF No. [29] at 7–8. Specifically, Plaintiff alleges that it provided the Loans (a benefit) to LCH Trading, but due to their nature as alter egos of LCH Trading, Defendants also received the same direct benefit. *Id.* The Court agrees. Based on the Court's finding above that Defendants are the alter egos of Chirino and the LCH Entities, it follows that any direct benefit conferred on the LCH Entities would also be conferred on Defendants. *See Agritrade, LP v. Quercia*, 253 So. 3d 28, 35–36 (Fla. 3d DCA 2017) ("We find that the veil-piercing theory was properly pled, and further, that competent, substantial evidence supported the jury's determination that an alter-ego relationship did exist and that a direct benefit was conferred on Curbelo."); *see also Huang v. Chen*, 2022 WL 18464362, at *4 (S.D. Fla. Sept. 7, 2022) ( finding that "the Court agrees with Plaintiff that it can be enough to meet the direct benefit element of an unjust enrichment claim where a complaint alleges facts demonstrating that the direct benefit was conferred on the defendant's alter ego," but that the complaint lacked sufficient allegations as to the alter ego theory). At the second element, Plaintiff alleges that each Defendant "voluntarily received, retained and enjoyed the benefits of the [Loan] Transfers at the expense of the [LCH Entities] and [Plaintiff]." ECF No. [1] ¶¶ 129, 137, 145. Finally, as to the third element, Plaintiff alleges that "[t]he circumstances render [each Defendant's] retention of the [Loan] Transfers inequitable unless [each Defendant] pays to the [Plaintiff] the value of the same." *Id.* ¶¶ 132, 140, 148. Thus, the undersigned finds that Plaintiff has met all elements of its unjust enrichment claims and **RECOMMENDS** that the Motion be **GRANTED** as to Counts V–VII.

### D. Damages

Once liability has been established, "[d]amages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits

15

establishing the necessary facts." *Adolph Coors Co.*, 777 F.2d at 1544 (quotations omitted). Rule 55 does not require an evidentiary hearing on damages where the amount claimed is either liquidated or capable of arithmetic calculation. *Safari Programs, Inc.*, 686 F. App'x at 746–47 ("[E]videntiary hearings are required in all but limited circumstances, such as when hearing any additional evidence would be truly unnecessary to a fully informed determination of damages") (quotations omitted); *Tara Productions, Inc.*, 449 F. App'x at 911–12 (noting that under Rule 55, district courts are not required to conduct evidentiary hearings). Based on the undersigned's recommendation above, damages must be determined on Counts V–VII for unjust enrichment.

Plaintiff seeks a total of $2,009,886.55 from Defendants on Counts V–VII, comprised of: $955,974.45 from Defendant FC Global on Count V, $925,534.00 from Defendant Diajen on Count VI, and $128,378.10 from Defendant All American Parts on Count VII. *See* ECF No. [11] at 18. In support of the damages amount sought, Plaintiff submitted the Affidavit of John Quarles, the Senior Special Assets Officer for Plaintiff. ECF No. [12]. In his affidavit, Mr. Quarles stated that "[b]etween the dates of January 6, 2017 and March 11, 2020, the LCH Entities [] transferred funds totaling $2,009,886.55" from "Synovus loan proceeds, none of which have been repaid to Synovus." *Id.* at 2. Mr. Quarles stated that the outstanding balance owed by FC Global is $955,974.45, the outstanding balance owed by Diajen is $925,534.00, and the outstanding balance owed by All American Parts is $128,378.10. *Id.* Further, Mr. Quarles attached charts of each transfer comprising the total amount owed to Plaintiff, including dates, amounts, and account numbers. *See* ECF No. [12-1] at 1–4. The undersigned finds that Plaintiff's showing, through the sworn statements of Mr. Quarles and the accompanying exhibits, is sufficient to establish the amount of damages herein without need for an evidentiary hearing.

## IV. RECOMMENDATION

Based on the foregoing, it is hereby **RECOMMENDED** that Plaintiff's Motion for Entry of Default Final Judgment and for an Award of Damages Against Defendants, ECF No. [11], be **GRANTED IN PART AND DENIED IN PART**, as follows:

1. As to Count I, default judgment should be **GRANTED** against all Defendants. The Court should enter a declaratory judgment that Defendants FC Global, Diajen, and All American Parts are alter egos or mere instrumentalities of Chirino and the LCH Entities.

2. As to Counts II–IV, default judgment should be **DENIED**.

3. As to Count V, default judgment should be **GRANTED** against Defendant FC Global. Plaintiff should be awarded a total of $955,974.45 from Defendant FC Global.

4. As to Count VI, default judgment should be **GRANTED** against Defendant Diajen. Plaintiff should be awarded a total of $925,534.00 from Defendant Diajen.

5. As to Count VII, default judgment should be **GRANTED** against Defendant All American Parts. Plaintiff should be awarded a total of $128,378.10 from Defendant All American Parts.

## V. OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Court within **SEVEN (7) DAYS** of being served with a copy of this Report and Recommendation. The undersigned has shortened the objection period because Defendants have not made any appearance in this lawsuit. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to

factual and legal conclusions." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on August 14, 2023.

_____
**JACQUELINE BECERRA**
**United States Magistrate Judge**